UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


FOSTER LEE BROWN,

                Petitioner,

v.                                      Case No. 3:04-cv-622-J-33MMH

JAMES R. MCDONOUGH,[1] et al.,

                Respondents.

_____

## ORDER

### I. Status

    Petitioner, an inmate of the Florida penal system who is proceeding pro se, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) pursuant to 28 U.S.C. § 2254 on July 28, 2004.  He challenges his 1997 state court conviction for first degree murder and aggravated battery with a firearm on the following grounds: (1) his conviction was obtained in violation of his right to due process of law; (2) Petitioner received ineffective assistance of counsel for counsel's failure to object to comments made by the prosecutor during closing argument; (3) Petitioner received ineffective assistance of counsel for counsel's failure to file a motion to sever his trial from that

_____

[1] James R. McDonough, the Interim Secretary of the Florida Department of Corrections, is substituted as the proper party Respondent for James V. Crosby, Jr., pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

of his co-defendant; (4) Petitioner received ineffective assistance of counsel for counsel's failure to call Detective Ron Booker as a witness at trial; (5) Petitioner received ineffective assistance of counsel for counsel's failure to inform Petitioner that Tony Carr would testify for the state; (6) Petitioner received ineffective assistance of counsel for counsel's failure to challenge the testimony of Michael Johnson; (7) Petitioner received ineffective assistance of counsel for counsel's failure to request that Petitioner's competency to stand trial be evaluated; (8) the trial court erred by allowing a non-expert witness to testify as an expert without first examining his qualifications; (9) the trial court erred in denying Petitioner's motion for judgment of acquittal; (10) Petitioner received ineffective assistance of counsel for counsel's failure to move for a mistrial; (11) Petitioner received ineffective assistance of counsel for counsel's failure to object to false statements made by the prosecutor; and, (12) Petitioner received ineffective assistance of counsel for counsel's failure to request the court to find that a discovery violation occurred.

On January 20, 2005, Respondents filed an Answer in Response to Order to Show Cause (Doc. #12) (hereinafter Response). Respondents filed their Exhibits to Response to Petition for Writ of Habeas Corpus (Doc. #13) (hereinafter Ex.) on January 26, 2005. On December 7, 2005, Petitioner filed his Reply in Answer to

Response to Order to Show Cause (Doc. #23).   Thus, this case is ripe for review.

## II. Procedural History

Petitioner was initially charged by indictment with the following offenses: (1) first degree murder; (2) armed robbery; (3) trafficking in cocaine while armed; (4) conspiracy to traffic in cocaine; (5) possession of a firearm by a convicted felon; and, (6) aggravated battery with a firearm.  Ex. A at 1-2.  Thereafter, the possession of a firearm by a convicted felon charge was severed from the other charges, and the state entered a *nolle prosequi* with respect to counts two, three and four.  Ex. B at 4-6.  Petitioner proceeded to a joint trial with his co-defendant, Fred Brooks, on the murder and aggravated battery counts.  See Ex. B.  Both defendants were found guilty of both charges.  Ex. A at 206-07; Brooks v. State, 762 So.2d 879 (Fla. 2000) (per curiam).  The jury recommended a sentence of life imprisonment without the possibility of parole for the Petitioner.  Ex. A at 249.  On October 28, 1997, the trial court adjudicated Petitioner guilty of the two offenses, sentencing Petitioner to life imprisonment without the possibility of parole for the murder and to thirty years imprisonment for the aggravated battery, to run consecutively.  Id. at 277-85.

Petitioner appealed, raising fourteen issues.  Ex. C.  On January 25, 1999, the First District Court of Appeal per curiam affirmed Petitioner's judgment of conviction, without issuing a

written opinion.  Ex. F.  The mandate issued on February 10, 1999.
Ex. G.

On November 22, 1999, Petitioner filed a motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850, in which he raised fifteen grounds.  Ex. H at 1-40.  On December 18, 2000, Petitioner filed an amendment to the motion, raising an additional ground for relief.  Id. at 41-47.  On April 16, 2001, he filed a motion to further amend his 3.850 motion to raise one additional ground.  Id. at 48-53.

After conducting an evidentiary hearing on two of Petitioner's ineffective assistance of counsel claims, the trial court entered an order denying the motion on October 21, 2002.  The court addressed the fifteen claims raised in the initial motion and the additional claim raised in the December 18, 2000, amendment to the motion; however, the court found that the additional claim raised in the April 16, 2001, amendment to the motion was procedurally barred as untimely.  Id. at 57-72.

Petitioner appealed, and on June 25, 2004, the First District Court of Appeal per curiam affirmed the trial court's order, without issuing a written opinion.  Ex. K.  The mandate issued on July 13, 2004.  Ex. L.

Petitioner filed a second 3.850 motion on September 15, 2003, in which he raised three grounds for relief.  Ex. M at 1-7.  On

October 31, 2003, the trial court entered an order finding the motion to be successive and untimely.  Id. at 8-9.

Petitioner appealed, and on April 22, 2004, the First District Court of Appeal per curiam affirmed the trial court's order, without issuing a written opinion.  Ex. O.  The mandate issued on May 10, 2004.  Ex. P.

As noted previously, Petitioner filed the Petition before this Court on July 28, 2004.  Thus, Respondents contend, and this Court agrees, that this action was timely filed.  See Response at 5-7.

### III.  Evidentiary Hearing

This Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing.  A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief.  Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)).  Here, the pertinent facts of the case are fully developed in the record before the Court.  The Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).  Therefore, an evidentiary hearing will not be conducted by this Court.

## IV.  Standard of Review

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA).  Since this action was filed after the effective date of AEDPA, the Court will analyze Petitioner's claim under 28 U.S.C. § 2254(d), as amended by AEDPA. Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).

The Eleventh Circuit has described the standard of review under AEDPA and has explained:

> The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this [action] and limits our review of the decisions of the state courts:
>
> > A federal court may not grant a petition for a writ of habeas corpus to a state prisoner on any claim that has been adjudicated on the merits in state court unless the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.
>
> Clark v. Crosby, 335 F.3d 1303, 1307-08 (11th Cir. 2003) (citations omitted).  A general

framework of substantial deference governs our review of every issue that the state courts have decided:

> [A] state-court decision can be "contrary to" this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.
>
>              . . . .
>
> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 405-07, 120 S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000).

<u>Diaz v. Sec'y for the Dep't of Corr.</u>, 402 F.3d 1136, 1141 (11th Cir.), <u>cert</u>. <u>denied</u>, 126 S.Ct. 803 (2005).

The Eleventh Circuit addressed the application of the "contrary to" clause in reviewing a state court adjudication:

> In applying the "contrary to" prong of AEDPA, we have recognized that where no Supreme Court precedent is on point, "we cannot say that the state court's conclusion . . . is contrary to clearly established Federal law as determined by the U.S. Supreme Court." <u>McIntyre v. Williams</u>, 216 F.3d 1254, 1258 (11th Cir. 2000).

<u>Washington v. Crosby</u>, 324 F.3d 1263, 1265 (11th Cir.), <u>cert</u>. <u>denied</u>, 540 U.S. 965 (2003).

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Furthermore, AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence. <u>See</u> <u>id</u>. at § 2254(e)(1). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus

review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003). <u>See</u> <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1227 (11th Cir. 2004), <u>cert</u>. <u>denied</u>, 125 S.Ct. 2963 (2005). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## V. The Evidence at Trial

The Florida Supreme Court fully summarized the evidence presented during the joint trial of the Petitioner and Fred Brooks as follows:

> At approximately 10:30 p.m. on the evening of August 28, 1996, Jacqueline Thompson and Tyrone Simmons were positioned at the corner of 23rd Street and Myrtle Avenue in Jacksonville, Florida--where Thompson was selling drugs--when Fred Brooks and Foster Brown drove up in a red Toyota Camry (the Camry). [FN3] Both Thompson and Simmons knew Brooks and Brown. Brown was driving the Camry as it approached, and Brooks asked where he and Brown could find some "juggler action," which, according to Thompson, is street slang for big rocks of crack cocaine. Thompson asked if they had any money, and Brooks produced five one-hundred-dollar bills. Thompson then inquired how much she would receive from the deal, and they replied with four "jugglers." After agreeing to accompany Brooks and Brown, Thompson entered the back seat of the Camry along with Brooks, while Simmons replaced Brown in the driver's seat, with Brown moving to the front passenger seat before the group drove away.

FN3.  Tony Carr testified that on August 27, 1996, between the hours of 4 and 6 p.m., he "rented", for $50, his candy-apple red 1995 Toyota Camry LE Sports Coupe to Brown, whom he had known for about four years, and Brooks, whom he did not know. The Camry was not returned that evening as agreed, however, and law enforcement officials found the vehicle abandoned approximately one week later.

In the same time frame in which the above-described events were transpiring, Michael Johnson drove his 1973 Chevrolet Impala (the Impala) to the home of Darryl Jenkins, his long-time friend, which was located at 2022 West 13th Street in Jacksonville, Florida. Johnson traveled to the home to meet Lashan Mahone, his girlfriend, so that he and Mahone could go to a club later that night. Mahone had not yet arrived at Jenkins' home when Johnson drove up, so Johnson backed his Impala into the driveway, opened the driver's side door, and sat in the car listening to music. Mahone arrived several minutes later, positioned her vehicle next to the Impala, and went over to Johnson. Johnson and Mahone began talking and listening to music, while Darryl Jenkins and another man, Jessie Bracelet, sat in chairs in the driveway near the front of Mahone's car.

During this time period, the passengers in the Camry were traveling to Jenkins' house, where Thompson had already purchased drugs earlier that evening. [FN4] Though not a drug user like Jenkins, Michael Johnson often sold drugs from Jenkins' home, and Thompson had known Johnson for at least five years and had regularly purchased crack cocaine from him. Thompson testified that she accompanied Brooks and Brown to Jenkins' house because they had never conducted a drug transaction with Johnson, and therefore he would not have "served" them without her assistance. On the way to Jenkins' house, Brooks and Brown

10

specifically stated that they wanted to buy
fifty rocks, or $500 worth of crack cocaine.
As the group proceeded to the destination,
neither Thompson nor Simmons saw any weapons
or heard any mention of a robbery. Also
during the drive to Jenkins' house, Thompson
stated that she would first buy a $10 "dime
rock" of crack cocaine from Johnson to provide
Brooks and Brown with a sample of the drug
they would be obtaining.

> FN4. Thompson testified that she had
> never bought drugs directly from
> Jenkins, and during the drug buy
> that took place at Jenkins' house
> earlier in the evening, she had made
> the purchase from either an
> individual named "Mall" or an
> individual named "Shack."

The Camry and its passengers arrived at
Jenkins' home several minutes after Mahone had
arrived at that location. Simmons parked the
Camry approximately ten to twenty-five feet
from Jenkins' driveway. Thompson exited the
vehicle and proceeded towards Jenkins' house,
at which point Johnson called her over.
Thompson bought a dime rock from Johnson and
indicated that she had two "dogs" (meaning
friends) who wanted to spend $500. Thompson
then returned to the Camry with the dime rock
and spoke with Brooks and Brown. After
examining the rock purchased by Thompson,
Brown stated that the rock was "decent," but
Brooks expressed his view that the rock was
"too flat." Brooks changed his mind as to
purchasing fifty rocks and stated that he only
wanted to purchase thirty. Thompson returned
to the back seat of the Camry, and a chain of
events related to the drugs subsequently
ensued among Johnson, Brooks, and Brown, which
occurred near the trunk area on the passenger
side of Johnson's Impala. [FN5] As the
transaction began, Simmons and Thompson were
sitting in the Camry, Mahone was sitting in
the driver's seat of Johnson's Impala, and
Jenkins, along with Jessie Bracelet, were

11

still sitting in chairs in the driveway near the front of Mahone's car.

> FN5.   Three   eyewitnesses--Michael Johnson, Lashan Mahone, and Jessie Bracelet--testified   that   the transaction   took   place   near   the trunk area on the passenger side of Johnson's   Impala.   Jacqueline Thompson testified at trial that the transaction took place between the Camry   and   the   Impala.   Tyrone Simmons   did   not   specifically indicate where the transaction took place,   but   he   did   indicate   that Brooks and Brown walked towards the driveway to conduct the transaction.

According to Johnson, who testified that he had been selling crack cocaine almost every day for approximately two years, after he sold the dime rock of crack to Thompson, he walked over to Jenkins and obtained a sandwich bag containing what, in his opinion, was crack cocaine.   Johnson did not know exactly how many rocks were in the bag, but he testified that he knew there were "enough to sell 50 rocks," each identical in shape and weighing approximately one gram.   Through Johnson's extensive experience in dealing with crack cocaine, he knew that a "juggler," or rock of crack cocaine, weighs one gram.   After retrieving the sandwich bag from Jenkins, Johnson moved to the trunk area on the passenger side of his Impala, and he recognized the two men approaching him as Brooks and Brown.   He inquired if they were the individuals who wanted to purchase fifty rocks, and Brown replied that they only wanted thirty rocks.

Johnson testified that he was standing in the middle of Brooks and Brown, with Brown on his left and Brooks on his right, closest to the back seat of the Impala.   Johnson observed Brown holding several one hundred dollar bills in his hand, but Johnson testified that he never received money from anyone other than

12

Thompson, who had previously given him $10 to purchase the initial dime rock. [FN6] Johnson untied the sandwich bag, reached in, and started to count the rocks. At about the time this occurred, Johnson observed Brooks reaching into his pocket, and Johnson thought Brooks was merely retrieving money. However, Johnson then observed that Brooks was actually pulling a gun from his pocket, which he noticed when it hit the side of the Impala. Johnson dropped the sandwich bag of crack cocaine on the trunk of the car and heard Jenkins make a statement in the nature of, "Hey, man, what's up? He got a gun or something." Johnson then saw Brooks point the gun at Jenkins and shoot one time. Johnson turned and ran in fear past Brown, who stepped back as though he was reaching for something in his pocket as Johnson ran toward the gate in front of Jenkins' home. Johnson then heard ten to twelve more gunshots as he ran through the yard; it sounded as though two guns had fired because one sounded louder than the other. While Johnson was running away, a bullet struck him in the back, exited through his chest and hit him in the arm. Johnson made it to safety around the back of Jenkins' home, where someone helped him in through the back door. Shortly thereafter, Lashan Mahone transported Johnson to the hospital, and he never again saw the sandwich bag containing crack.

> FN6. Jacqueline Thompson testified that she saw Brown give $300 to Johnson.

Johnson's testimony concerning the shooting was consistent with other testimony elicited at trial. Jacqueline Thompson remembered a voice calling, yelling, or screaming something from the driveway, and she then heard gunfire. She turned and looked out of the back window of the Camry, and saw Brooks firing a weapon over the top of Johnson's Impala. After lowering her head, she heard ten to fifteen more gunshots. Similarly, Tyrone Simmons heard a loud voice

and gunshots coming from the rear of the
Camry. When Simmons turned and looked through
the rear window, he also saw Brooks firing a
weapon and a person running through a gate
towards Jenkins' home. Simmons also heard
more shots after he lowered his head.

Jessie Bracelet, who had been seated next
to Jenkins, testified that he had gotten up
from his chair and taken two to three steps
when he heard Jenkins scream, "He's got a
gun." Bracelet looked back and saw the man on
Johnson's right (Brooks) extend his arm and
fire at Jenkins, who was standing by that
time. The gunman was approximately fifteen
feet away from Bracelet when Jenkins was shot.
At trial, Bracelet identified Brooks as the
gunman. Upon being shot, Jenkins slumped,
reached for his chest, and then began to run
for safety across the street. Bracelet also
ran away and heard ten to fifteen more
gunshots, several of which were fired at him.
It sounded as though the gunshots were coming
from two different weapons because some shots
were louder than others.

Finally, Lashan Mahone testified that she
saw one man on Johnson's left side and one on
his right during the drug transaction at the
rear of the Impala. She heard Jenkins scream
and then heard a shot. She then turned and
saw Johnson running through the fence near
Jenkins' house. She saw one of the men
standing with a gun in his hand, and it looked
like the man who had been on Johnson's right,
closest to her. She stated that she saw the
man shooting at Johnson as Johnson ran down
the side of Jenkins' house. Mahone heard more
gunshots emanating from the rear of the Impala
after she ducked down in the seat of that
vehicle. [FN7]

> FN7. Mahone further testified that
> the gunman backed up alongside the
> Impala and stopped for ten to
> fifteen seconds next to the window,
> close enough to touch. She saw his
> right profile but did not recognize

him that night.  Later, the police
showed her photographs on three
separate occasions, and although she
recognized Brooks' front-profile
picture the first two times, she
could not say he was the gunman.
After being shown a side-profile
picture of Brooks during the third
interview, she indicated that Brooks
looked like the gunman.  At trial,
Mahone could not say with certainty
that Brooks was the gunman, but she
did state that the gunman "looked
just like" Brooks.

After the gunshots ceased, Brooks and
Brown ran back to the Camry and jumped in the
front passenger seat, Brooks on top of Brown.
Thompson saw Brooks holding a "big silver
automatic gun" in his hand, and she saw Brown
holding a dark-colored gun in his hand.
Similarly, Simmons saw Brooks holding a
"chrome-plated 9 millimeter" gun in his hand,
but he did not see Brown holding a gun.  At
the direction of Brooks and Brown, Simmons
drove the Camry away from Jenkins' house,
ultimately arriving at a location on 14th
Street, where Simmons and Thompson exited the
vehicle. [FN8]

FN8. Thompson testified that on the
morning after the shooting, Brooks
came to her house and, after
indicating that Jenkins was dead,
said "Bitch, you didn't see
nothing."  Thompson also testified
that she saw Brown three or four
days after the shooting, at which
time he said, "Tell them we from
Georgia."

Back at Jenkins' house, Lashan Mahone
exited the Impala as soon as the Camry drove
away, and she started walking towards Jenkins'
house.  She stopped and looked around, having
a clear opportunity to see both the trunk of
the Impala and the surrounding areas.  As she
surveyed the area, Mahone did not see anyone

else near the Impala, nor did she see any
drugs on either the trunk or sides of that
vehicle.  A young lady named Kathy then exited
Jenkins' house and said, "Don't panic.  You
need to take Michael to the hospital."  Mahone
helped Johnson into her car and transported
him to the hospital.

Darryl Jenkins' body was found lying in a
neighbor's driveway at 2023 West 13th Street,
across the street from his home.  Officer
Robyn Pierce of the Jacksonville Sheriff's
Office was on duty at 10:57 p.m. on August 28,
1996, and was dispatched to that location.
When Officer Pierce arrived, rescue personnel
were already there working on Jenkins, but
Jenkins expired while Pierce was on the scene;
he died from a single gunshot wound to the
middle of the chest, with the bullet passing
through his heart and left lung, exiting from
the lower left side of his chest beneath the
armpit.  The wound suffered by Jenkins would
not have caused instantaneous death, but he
would have died within seconds, not minutes.
There was a blood trail leading from Jenkins'
body and crossing the street, but no weapon
was found at Jenkins' house or near his body.
Finally, ten shell casings from a nine
millimeter pistol were found on the trunk of
the Impala and on the ground beside that
vehicle.

Brooks v. State, 762 So.2d at 882-86.

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Petitioner contends that his conviction was obtained in
violation of his right to due process of law.  He alleges the
following facts in support of this claim:

The state proceeded to trial under the
dual theories of premeditated and felony
murder, as charged in a single indictment[.]
Prior to trial[,] the state nolle prosse[d]

counts 2, 3 & 4 of the indictment, the
necessary underlying felonies to support its
theory of felony murder.  The Petitioner was
never convicted of a felony necessary to
validate the state's felony murder theory[.]
Thus, the state abandoned the felony murder
theory when they nolle prossed the necessary
felonies of armed robbery, trafficking in
cocaine and conspiracy to traffic in cocaine
prior to trial.

On a general verdict form, the jury
returned a verdict of "guilty of 1[st degree]
murder as charged.["]  Such verdict form did
not distinguish between the state's dual
theories; thus, it can not be determined which
theory the jury relied upon when reaching its
verdict.

Petition at 5-5B.

Respondents contend, and this Court agrees, that this claim is

procedurally barred.  Petitioner raised this issue in ground one of

his second 3.850 motion.[2]  Ex. M at 2-3.  The trial court found

that the motion was untimely, in that it was filed more than two

years after Petitioner's conviction became final.  Id. at 8.  In

the alternative, the court found that the claims in the second

3.850 motion could have and should have been raised in the first

3.850 motion; therefore, the claims were procedurally barred.  Id.

at 8-9.

A state habeas corpus petitioner who
fails to raise his federal claims properly in
state court is procedurally barred from
pursuing the same claim in federal court

_____

[2] Petitioner claims that he also raised this issue on direct appeal;
however, after review of the record, it is clear this claim was not
presented in his direct appeal.

> absent a showing of cause for and actual
> prejudice from the default. Wainwright v.
> Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 53
> L.Ed.2d 594 (1977) . . . . [W]here the state
> court correctly applies a procedural default
> principle of state law to arrive at the
> conclusion that the petitioner's federal
> claims are barred, Sykes requires the federal
> court to respect the state court's decision.
> Atkins v. Singletary, 965 F.2d 952, 956 (11th
> Cir. 1992), cert. denied, 515 U.S. 1165, 115
> S.Ct. 2624, 132 L.Ed.2d 865 (1995); Meagher v.
> Dugger, 861 F.2d 1242, 1245 (11th Cir. 1988).

Bailey v. Nagle, 172 F.3d 1299, 1303 (11th Cir. 1999) (per curiam).

Here, the trial court properly found that this claim was untimely and procedurally barred. The First District Court of Appeal affirmed the trial court's order. Thus, this claim has been procedurally defaulted.

"Procedural defaults in state courts will foreclose federal court review, absent a showing of cause and prejudice." Parker v. Sec'y for the Dep't of Corr., 331 F.3d 764, 770 (11th Cir. 2003) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)), cert. denied, 540 U.S. 1222 (2004). "[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice." Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)), cert. denied, 538 U.S. 947 (2003). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere

18

"'legal' innocence." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002).

Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar.  Furthermore, he has not shown that he is entitled to the fundamental miscarriage of justice exception.  Thus, the Court will not address Petitioner's claim raised in ground one.

## B. Ground Two

Petitioner contends that he received ineffective assistance of counsel for counsel's failure to object to comments made by the prosecutor during closing argument.  This claim has been procedurally defaulted for the same reasons stated in the discussion of ground one because this ineffectiveness claim was raised as ground three in Petitioner's second 3.850 motion.  <u>See</u> Ex. M at 4-5.

Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar.  Furthermore, he has not shown that he is entitled to the fundamental miscarriage of justice exception.  Thus, the Court will not address the ineffectiveness claim raised in ground two.

## C. Ground Three

Petitioner contends that he received ineffective assistance of counsel for counsel's failure to file a motion to sever his trial from that of his co-defendant.  "The Sixth Amendment guarantees

criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense."  Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted).  The Eleventh Circuit captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner.  See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  Establishing these two elements is not easy:  "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).

> For assessing a lawyer's performance, Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000) (en banc) cert. denied, 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001), sets out the basic law:  "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment."  Id. at 1314 (internal marks omitted). . . .  Our role in reviewing an ineffective assistance claim is not to "grade" a lawyer's performance; instead, we determine only whether a lawyer's performance was within "the wide range of professionally competent assistance."  See Strickland, 104 S.Ct. at 2066.

> The inquiry into whether a lawyer has provided effective assistance is an objective one:  a petitioner must establish that no objectively competent lawyer would have taken

the action that his lawyer did take."  <u>See</u>
<u>Chandler</u>, 218 F.3d at 1315. . . .

A petitioner's burden of establishing
that his lawyer's deficient performance
prejudiced his case is also high.  "It is not
enough for the [petitioner] to show that the
errors had some conceivable effect on the
outcome of the proceeding.  Virtually every
act or omission of counsel would meet that
test."  <u>Strickland</u>, 104 S.Ct. at 2067.
Instead, a petitioner must establish that a
reasonable probability exists that the outcome
of the case would have been different if his
lawyer had given adequate assistance.  <u>See</u> <u>id</u>.
at 2068.

<u>Van Poyck v. Florida Dep't of Corrections</u>, 290 F.3d 1318, 1322-23

(11th Cir. 2002) (per curiam) (footnotes omitted), <u>cert</u>. <u>denied</u>,

537 U.S. 812 (2002), 537 U.S. 1105 (2003).

In sum, "[w]ithout proof of both deficient performance and

prejudice to the defense, . . . it could not be said that the

sentence or conviction 'resulted from a breakdown in the adversary

process that rendered the result of the proceeding unreliable,' and

the sentence or conviction should stand."  <u>Bell v. Cone</u>, 535 U.S.

685, 695 (2002) (internal citation omitted) (quoting <u>Strickland v.</u>

<u>Washington</u>, 466 U.S. 668, 687 (1984)).

Petitioner raised this claim as ground one in his first 3.850

motion and, after identifying <u>Strickland</u> as the controlling legal

authority, the trial court adjudicated the claim as follows:

In ground one of the November 22, 1999,
Motion, Defendant claims that counsel rendered
ineffective assistance by failing to move to
sever Defendant's trial from the trial of the
co-defendant, Fred Brooks.  Defendant asserts

21

that he demanded that his trial be severed from Brooks' trial because he wanted to present evidence that Fred Brooks alone committed the murder. Defendant, further, asserts that the jury found that Brooks killed Darryl Jenkins. Defendant relies on excerpts from his sentencing hearing to support his claim that the jury found that the co-defendant killed Darryl Jenkins. Defendant contends that if his trial had been severed, the jury would have acquitted him on the murder charge.

Initially, this Court notes that Defendant admits in his Motion that this issue was raised on direct appeal. Accordingly, this claim is procedurally barred, for claims that were or could have been raised on direct appeal are barred in post conviction proceedings. Rosier v. State, 655 So.2d 160 (Fla. 1st DCA 1995). Defendant may not seek to avoid this procedural bar by couching his allegations in terms of ineffective assistance of counsel. See Arbelaez v. State, 775 So.2d 909 (Fla. 2000) (stating, "Arbelaez may not relitigate procedurally barred claims by couching them in terms of ineffective assistance of counsel."); Cherry v. State, 659 So.2d 1069 (Fla. 1995); Chandler v. State, 634 So.2d 1066 (Fla. 1994); Lopez v. Singletary, 634 So.2d 1054 (Fla. 1994); Torres-Arboleda v. Dugger, 636 So.2d 1321 (Fla. 1994); Swafford v. State, 569 So.2d 1264 (Fla. 1990); Medina v. State, 573 So.2d 293 (Fla. 1990).

Further, Defendant has failed to establish prejudice as a result of the alleged error of counsel. Defendant has failed to allege that he was prevented from presenting evidence as a result of the simultaneous trials. Moreover, the jury found Defendant guilty of first degree murder as charged in the indictment. (Exhibit "C.") Therefore, Defendant has failed to establish error on the part of counsel or prejudice to his case.

Ex. H at 58-59.

Respondents argue that this claim is procedurally barred for the reason set forth above by the trial court. This Court disagrees. Petitioner properly raised this ineffectiveness claim in his first 3.850 motion.

In the alternative, Respondents argue that the trial court's adjudication on the merits is due deference under AEDPA. This Court agrees. The trial court's decision with respect to this ineffectiveness claim was affirmed on appeal. Thus, there are qualifying state court decisions from both the state trial and appellate courts. The Court must next consider the "contrary to" and "unreasonable application" components of the statute. "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).

Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Furthermore, the Court finds this claim to be without merit for the reasons stated by the Respondents in their Response. See Response

at 20-22.  Thus, Petitioner is not entitled to relief on the basis of this claim.

### D. Ground Four

Petitioner claims that he received ineffective assistance of counsel for counsel's failure to call Detective Ron Booker as a witness at trial.  Petitioner raised this claim as ground two in his first 3.850 motion, and the trial court adjudicated the claim as follows:

> In ground two of the November 22, 1999, Motion, Defendant claims that counsel rendered ineffective assistance by failing to call material witnesses on Defendant's behalf. Defendant asserts that counsel should have called Detective Ron Booker to testify as a witness for the defense.  This Court finds that Defendant agreed with counsel's decision not to call any witness at trial.  The trial Court specifically addressed Defendant concerning the decision not to call any witnesses and Defendant affirmed that he was informed of the advantages and disadvantages of that decision and agreed with the strategy. (Exhibit "D," pages 956-959.)  Defendant may not now seek to go behind his sworn representations to this Court in a Post Conviction Motion.  <u>Stano v. State</u>, 520 So.2d 278 (Fla. 1988); <u>Dean v. State</u>, 580 So.2d 808 (Fla. 3d DCA 1991); <u>Bir v. State</u>, 493 So.2d 55 (Fla. 1st DCA 1986).

Ex. H at 60.

The trial court's decision was affirmed on appeal.  Thus, there are qualifying state court decisions from both the state trial and appellate courts.  Upon a thorough review of the record and the applicable law, it is clear that the state courts'

adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Furthermore, the Court finds this claim to be without merit for the reasons stated by the Respondents in their Response. See Response at 24-26. Thus, Petitioner is not entitled to relief on the basis of this claim.

## **E. Ground Five**

Petitioner contends that he received ineffective assistance of counsel for counsel's failure to inform Petitioner that Tony Carr would testify for the state at trial. Petitioner raised this claim as ground four in his first 3.850 motion, and the trial court adjudicated the claim as follows:

> In ground four of the November 22, 1999, Motion, Defendant claims that counsel rendered ineffective assistance by not informing Defendant that Tony Carr would testify for the State. Defendant contends that Tony Carr testified falsely and that if Defendant had known Tony Carr was going to testify, he could have provided counsel with information to refute Mr. Carr's testimony. Defendant asserts that Mr. Carr testified that he had known Defendant since 1989 and that he saw Defendant regularly in 1993. Defendant asserts that this testimony was false because Defendant was incarcerated in 1993, therefore, Mr. Carr could not have seen Defendant regularly.

Initially, this Court notes that Mr. Carr's testimony concerning his encounter's [sic] with Defendant in 1993, was insignificant. The crux of Mr. Carr's testimony concerned his 1995 Toyota Camry. Mr. Carr testified that on August 27, 1996, [he] loaned his car to Defendant and Fred Brooks in exchange for fifty dollars. (Exhibit "D," pages 672-674.) Mr. Carr, further, testified that Defendant and Fred Brooks did not return the car as agreed. (Exhibit "D," page 674.) In light of Mr. Carr's testimony about the borrowed vehicle, this Court finds that assuming, *arguendo,* Mr. Carr did not see Defendant regularly in 1993, Defendant did not suffer any prejudice as a result of that testimony. Defendant has not alleged that Mr. Carr did not know Defendant or that Mr. Carr did not loan him the car o[n] August 27, 1996. Moreover, the Florida Supreme Court, while reviewing the appeal of the co-defendant, Fred Brooks, found that Tony Carr's testimony about the borrowed Toyota Camry was properly admitted. <u>Brooks v. State</u>, 762 So.2d 879 (Fla. 2000). Accordingly, Defendant has failed to establish error on the part of counsel or prejudice to his case.

Ex. H at 61-62 (footnote omitted).

The trial court's decision was affirmed on appeal. Thus, there are qualifying state court decisions from both the state trial and appellate courts. Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Furthermore,

the Court finds this claim to be without merit for the reasons stated by the Respondents in their Response.  See Response at 27-29.  Thus, Petitioner is not entitled to relief on the basis of this claim.

## F. Ground Six

In ground six, Petitioner claims that he received ineffective assistance of counsel for counsel's failure to challenge the testimony of Michael Johnson.  Specifically, Petitioner contends that counsel failed to: (1) call Detective Booker as a witness to contradict Michael Johnson's testimony regarding the authenticity and weight of the cocaine; (2) request a hearing outside the presence of the jury to determine the reliability of Michael Johnson as an expert witness; and, (3) present testimony from a defense expert concerning the weight of a $10.00 piece of crack cocaine.

Respondents contend, and this Court agrees, that certain portions of ground six have not been exhausted.  Specifically, Petitioner never presented the following sub-claims to the state courts: (1) that counsel failed to call Detective Booker as a witness to contradict Michael Johnson's testimony regarding the authenticity and weight of the cocaine; and, (2) that counsel failed to request a hearing outside the presence of the jury to determine the reliability of Michael Johnson as an expert witness.

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies.  See Castille v. Peoples, 489 U.S. 346, 349, reh'q denied, 490 U.S. 1076 (1989); Rose v. Lundy, 455 U.S. 509 (1982).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." Turner, 339 F.3d at 1281 (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)).  "This exhaustion doctrine 'is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts.'"  Turner, 339 F.3d at 1281 (quoting O'Sullivan, 526 U.S. at 845).

Generally, a federal habeas petition should be dismissed if the petitioner has failed to exhaust state remedies. See Keeney v. Tamayo-Reyes, 504 U.S. 1, 10 (1992).  A federal court need not dismiss the petition to allow for exhaustion of state remedies, however, if such a dismissal would be futile.

> [I]f the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal.

Bailey v. Nagle, 172 F.3d at 1303 (citing Snowden v. Singletary, 135 F.3d 732, 737 (11th Cir.), cert. denied, 525 U.S. 963 (1998)).

It would be futile to dismiss this case to give Petitioner the opportunity to exhaust these two sub-claims because they could have and should have been raised in his first 3.850 motion.  If they were presented at this time in another 3.850 motion, the motion would be subject to dismissal as untimely and successive.  Thus, these two sub-claims have been procedurally defaulted.

Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar.  Furthermore, he has not shown that he is entitled to the fundamental miscarriage of justice exception.  Thus, the Court will not address the first two sub-claims raised in ground six.

As noted previously, in the exhausted portion of ground six, Petitioner contends that counsel failed to challenge the testimony of Michael Johnson and failed to present testimony from a defense expert concerning the weight of a $10.00 piece of crack cocaine. Petitioner raised the exhausted portion of ground six in grounds three and ten in his first 3.850 motion, and the trial court adjudicated the claims as follows:

> In ground three of the November 22, 1999, Motion, Defendant claims that counsel failed to impeach a State witness at trial "who was critical to the case in chief for the State of Florida."  Defendant asserts that counsel should have called an expert witness to impeach the deposition testimony of Michael Johnson. . . .
>
> Initially, this Court notes that the State did not present Michael Johnson as an

expert witness.[3] (Exhibit "D," pages 371-441.) Further, the testimony of Michael Johnson that Defendant is challenging in the instant claim was provided during a deposition. Accordingly, Defendant has failed to establish that the jury was presented with this testimony. Moreover, since Michael Johnson did not testify as an expert, there was no reason for counsel to impeach Johnson's testimony by calling an expert to testify about the actual amount of grams of cocaine in one rock. Accordingly, Defendant has failed to demonstrate error on the part of counsel or prejudice to his case.

. . . .

In ground ten of the November 22, 1999, Motion, Defendant claims that counsel rendered ineffective assistance by failing to strike and impeach Michael Johnson's testimony as an expert witness. Defendant asserts that counsel should have objected to the testimony of Michael Johnson where there was "no predicate for the basis to give an opinion on selling, measuring and weighing cocaine used to establish the 28 grams or more necessary for the charge of trafficking in cocaine."

Initially, this Court notes that counsel did object to the testimony of Michael Johnson

---

[3] The state did not initially call Michael Johnson as an expert. However, when he started to testify about the weight and authenticity of the cocaine he was selling, the defense attorneys for both Defendants objected. During the argument on the objections to Michael Johnson's testimony, the trial court asked, "So this witness is giving an opinion or the State is trying to get him to give an opinion before the jury [that] there were at least 50 one gram rocks in the bag?" Ex. B at 405. The prosecutor replied, "Yes, sir." Id. The court then said, "He never weighed it. It's sort of like an expert witness." Id. The prosecutor replied, "That's in essence it. He's a user, consumer seller or at least a seller, a dealer experience." Id. Later, in overruling the objections, the trial court noted that Michael Johnson's testimony "will be in the nature of expert testimony and it certainly will be subject to cross-examination and all those matters that the defense has brought up go to the weight of the evidence and can be brought out in cross-examination." Id. at 414.

> concerning the crack cocaine and the amount
> contained in the baggie. (Exhibit "D," pages
> 385-427.) Further, counsel vigorously cross-
> examined Michael Johnson with regard to his
> ability to identify cocaine, the amount
> requested by Defendant, and the total amount
> of crack rocks contained in the baggie.
> (Exhibit "D," pages 448-523.) Moreover, the
> Florida Supreme Court, in reviewing the appeal
> of the co-defendant, Fred Brooks, found that
> Michael Johnson was entitled to express his
> opinion as an expert. Brooks v. State, 762
> So.2d 879 (Fla. 2000.) Accordingly, Defendant
> has failed to establish error on the part of
> counsel or prejudice to his case.

Ex. H at 60-61, 65-66.

The trial court's decision was affirmed on appeal. Thus, there are qualifying state court decisions from both the state trial and appellate courts. Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Furthermore, this Court finds the claim to be without merit. Upon review of the record, it is clear that Petitioner's defense attorney vigorously objected to Michael Johnson's "expert" testimony and thoroughly cross-examined him on this subject. Furthermore, counsel was not ineffective for failing to call an expert witness to refute Michael Johnson's testimony. The Court

notes that the cocaine in question was never recovered; therefore, it was not admitted into evidence at trial.   Clearly, no expert would be permitted to testify regarding the weight and authenticity of a substance he or she did not test or even see.   This claim is wholly without merit.   Thus, Petitioner is not entitled to relief on the basis of this claim.

## G. Ground Seven

Petitioner contends that he received ineffective assistance of counsel for counsel's failure to request that Petitioner's competency to stand trial be evaluated.   Petitioner raised this claim as ground six in his first 3.850 motion, and the trial court adjudicated the claim as follows:

> In ground six of the November 22, 1999, Motion, Defendant claims that his conviction was obtained while he was incompetent to stand trial.   Defendant asserts that counsel knew that he was incompetent to stand trial and failed to investigate Defendant's mental state.   This Court notes that Defendant has failed to establish that there was sufficient reason to believe that he was incompetent to stand trial. Further, the record reveals that counsel filed a motion requesting a confidential psychological evaluation. (Exhibit "E.")   The trial Court granted counsel's request in an extensive and extremely detailed order appointing a psychologist for the purpose of evaluating Defendant. (Exhibit "F.")   This Court is not persuaded by the argument that the psychologist's report found Defendant to be incompetent to stand trial, yet counsel

> decided to proceed with the trial.[4]
> Accordingly, Defendant has failed to
> demonstrate error on the part of counsel or
> prejudice to his case.

Ex. H at 62-63.

The trial court's decision was affirmed on appeal.  Thus, there are qualifying state court decisions from both the state trial and appellate courts.  Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Furthermore, this claim is without merit for the reasons stated by the Respondents in their Response.  See Response at 33-34.  Thus, Petitioner is not entitled to relief on the basis of this claim.

## H. Ground Eight

Petitioner asserts that the trial court erred by allowing Michael Johnson to testify as an expert without first examining his qualifications.  Petitioner raised a portion of this claim on

---

4 Furthermore, the record reflects that on May 9, 1997, one day after the verdicts in Petitioner's case, the trial court entered an order appointing experts to evaluate Petitioner's competency.  Ex. A at 208-11. On May 14, 1997, the two experts opined that the Petitioner was competent to proceed and that he "was not insane at the time of the alleged crime but was able to understand the nature, quality and wrongfulness of his acts."  Id. at 220.

direct appeal,[5] see Ex. C at 17; however, both in his direct appeal and in his Petition, Petitioner raises this claim as an issue of state law.

The purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States.  See Coleman v. Thompson, 501 U.S. 722, reh'g denied, 501 U.S. 1277 (1991).  The writ of habeas corpus under 28 U.S.C. § 2254 "was not enacted to enforce State-created rights." Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000) (citing Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988)), cert. denied, 531 U.S. 1170 (2001).

The federal habeas corpus court will be bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate.  McCoy v. Newsome, 953 F.2d 1252, 1264 (11th Cir.) (per curiam), cert. denied, 504 U.S. 944 (1992).  As succinctly stated by the Eleventh Circuit:

> A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.  Bronstein v. Wainwright, 646 F.2d 1048, 1050 (5th Cir. Unit B June 1981).  State courts are the ultimate expositors of their own state's laws, and federal courts entertaining petitions for

---

[5] The Court notes that to the extent Petitioner alleges different or additional facts in support of his claim here than he alleged in support of this claim on direct appeal, this ground is procedurally barred.

34

> writs of habeas corpus are bound by the
> construction placed on a state's criminal
> statutes by the courts of the state except in
> extreme cases. <u>Mendiola v. Estelle</u>, 635 F.2d
> 487, 489 (5th Cir. Unit A 1981).

<u>McCullough v. Singletary</u>, 967 F.2d 530, 535-36 (11th Cir. 1992),

<u>cert</u>. <u>denied</u>, 507 U.S. 975, <u>reh'q</u> <u>denied</u>, 507 U.S. 1046 (1993).

In <u>Mills v. Singletary</u>, 161 F.3d 1273, 1289 (11th Cir. 1998),

<u>cert</u>. <u>denied</u>, 528 U.S. 1082 (2000), the Eleventh Circuit Court of

Appeals explained that federal courts possess only limited

authority to consider state evidentiary rulings in a habeas

proceeding brought by a state prisoner.

> Federal courts generally do not review a
> state court's admission of evidence in habeas
> corpus proceedings. <u>See</u> <u>McCoy v. Newsome</u>, 953
> F.2d 1252, 1265 (11th Cir.), <u>cert</u>. <u>denied</u>, 504
> U.S. 944, 112 S.Ct. 2283, 119 L.Ed.2d 208
> (1992). We will not grant federal habeas
> corpus relief based on an evidentiary ruling
> unless the ruling affects the fundamental
> fairness of the trial. <u>See</u> <u>Baxter v. Thomas</u>,
> 45 F.3d 1501, 1509 (11th Cir.) (stating that
> we "inquire only to determine whether the
> error was of such magnitude as to deny
> fundamental fairness to the criminal trial.")
> (citations omitted), <u>cert</u>. <u>denied</u>, 516 U.S.
> 946, 116 S.Ct. 385, 133 L.Ed.2d 307 (1995);
> <u>McCoy</u>, 953 F.2d at 1265. "A denial of
> fundamental fairness occurs whenever the
> improper evidence 'is material in the sense of
> a crucial, critical, highly significant
> factor.'" <u>Snowden v. Singletary</u>, 135 F.3d
> 732, 737 (11th Cir. 1998) (quoting <u>Osborne v.</u>
> <u>Wainwright</u>, 720 F.2d 1237, 1238 (11th Cir.
> 1983)), <u>cert</u>. <u>denied</u>, 525 U.S. 963, 119 S.Ct.
> 405, 142 L.Ed.2d 329 (1998).

The category of infractions that violate "fundamental

fairness" is defined very narrowly. <u>See</u> <u>Estelle v. McGuire</u>, 502

U.S. 62, 73 (1991).   Moreover, this Court "must defer to a state court's interpretation of its own rules of evidence and procedure." Machin v. Wainwright, 758 F.2d 1431, 1433 (11th Cir. 1985).

Here, the testimony of Michael Johnson was properly admitted. See Response at 36-37; Brooks v. State, 762 So.2d at 891-94 (finding, in the direct appeal of Petitioner's co-defendant, that the trial court did not err in allowing Michael Johnson, an experienced dealer of crack cocaine, to testify as an expert regarding the identity and approximate weight of the rocky substance in a bag, i.e., that the substance was crack cocaine and that each rock weighed approximately one gram).   The trial court's admission of this evidence did not render Petitioner's trial fundamentally unfair.   Thus, Petitioner is not entitled to federal habeas corpus relief on the basis of this claim.

## I. Ground Nine

Petitioner contends that the trial court erred in denying Petitioner's motion for judgment of acquittal.   Petitioner raised a portion of this claim on direct appeal,[6] see Ex. C at 21-22; however, both in his direct appeal and in his Petition, Petitioner raises this claim as an issue of state law rather than a federal insufficiency claim.

---

[6] The Court notes that to the extent Petitioner alleges different or additional facts in support of his claim here than he alleged in support of this claim on direct appeal, this ground is procedurally barred.

However, assuming *arguendo* that Petitioner is attempting to raise a federal sufficiency of the evidence claim and such a claim was properly exhausted, it is without merit.  The Due Process Clause of the Fourteenth Amendment requires the state to prove beyond a reasonable doubt each element of the offense charged. Thompson v. Nagle, 118 F.3d 1442, 1448 (11th Cir. 1997)(citing Jackson v. Virginia, 443 U.S. 307, 314 (1979)), cert. denied, 522 U.S. 1125 (1998).  "[T]his court must presume that conflicting inferences to be drawn from the evidence were resolved by the jury in favor of the State."  Thompson v. Nagle, 118 F.3d at 1448 (citing Machin v. Wainwright, 758 F.2d 1431, 1435 (11th Cir. 1985)).  The relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the charged offense beyond a reasonable doubt.  Thompson, 118 F.3d at 1448.

The requirement under Florida law--that the circumstantial evidence must be inconsistent with any reasonable hypothesis of innocence--is not mandated by federal law.  In fact, the opposite is true.  "The Court need not exclude every reasonable hypothesis of innocence or find guilt to be the only reasonable conclusion." United States v. Garcia, 13 F.3d 1464, 1473 (11th Cir.) (citing United States v. Kelly, 888 F.2d 732, 740 (11th Cir. 1989)), cert. denied, 512 U.S. 1226 (1994).  See also Johnson v. Alabama, 256 F.3d 1156, 1172 (11th Cir 2001) (noting that, although each element

of the offense must be established beyond a reasonable doubt, the state is not required to rule out every hypothesis except that of the guilt of the defendant) (citing <u>Jackson</u>, 443 U.S. at 326 and <u>Martin v. Alabama</u>, 730 F.2d 721, 724 (11th Cir. 1984)), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002).

Here, after a thorough review of the trial transcript, it is clear that the state presented sufficient evidence on each element of the charged offenses.  <u>See</u> Response at 39-42.  Thus, Petitioner is not entitled to relief on the basis of this claim.

## J. Ground Ten

Petitioner claims that he received ineffective assistance of counsel for counsel's failure to move for a mistrial after learning that the state's witnesses were present in the courtroom during the state's opening argument.  Respondents contend that this claim is procedurally barred.  This Court agrees.

Although Petitioner raised this claim in his December 18, 2000, amendment to his first 3.850 motion, he did not include this claim in his appeal of the order denying the 3.850 motion, as amended.[7]  Thus, Petitioner did not exhaust this claim in state

---

[7] Petitioner did not raise this issue in his initial brief on appeal of the order denying his first 3.850 motion.  <u>See</u> Ex. I at 1-29. However, in an amendment to his brief, he argued that post-conviction counsel was ineffective for failing to locate witnesses and prepare for the evidentiary hearing on this claim in state court.  <u>See</u> <u>id</u>. at 31-32. Raising this ineffective assistance of post-conviction counsel claim on appeal of the order denying the 3.850 motion was not sufficient to exhaust the ineffective assistance of trial counsel claim (trial counsel's failure to move for a mistrial).

court.   See Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979) (finding that exhaustion requires not only the filing of a Rule 3.850 motion, but also an appeal of its denial); Farrell v. Lane, 939 F.2d 409, 410 (7th Cir.)(finding that claims presented in a post-conviction motion but not appealed were procedurally barred in subsequent habeas proceedings), cert. denied, 502 U.S. 944 (1991); Smith v. Jones, 923 F.2d 588, 589 (8th Cir. 1991) (finding that the claims presented in a post-conviction motion that were not included in the appeal of the order denying that motion were procedurally barred).

It would be futile to dismiss this case to give Petitioner the opportunity to exhaust his ineffective assistance of counsel claim because it could have and should have been included in his appeal of the order denying his 3.850 motion.   Thus, this ineffective assistance of counsel claim has been procedurally defaulted. Petitioner has not shown both cause and prejudice nor has he demonstrated that he meets the requirements of the fundamental miscarriage of justice exception.   Therefore, the Court need not address this ground.

However, even if this Court assumes that Petitioner's appeal of the order denying the 3.850 motion was sufficient to exhaust this claim, he is not entitled to relief.   As noted previously, Petitioner raised this claim in his December 18, 2000, amendment to

his first 3.850 motion, and the trial court adjudicated the claim

as follows:

> In Defendant's Amended Motion for Post
> Conviction Relief filed on December 18, 2000,
> Defendant raises one additional ground for
> relief. Defendant claims that counsel
> rendered ineffective assistance by failing to
> object to the State's witnesses being present
> during opening statements. Defendant asserts
> that Michael Johnson, Lashan Mahone and Jesse
> Bracelet were present during the State's
> opening statement and their testimony was
> patterned after the State's opening statement.
> Defendant contends that counsel should have
> moved for a mistrial.
>
> On July 31, 2002, at the evidentiary
> hearing on this issue, post-conviction counsel
> informed this Court that despite employing an
> investigator, they were unable to locate and
> produce any of the witnesses alleged to have
> been in the courtroom during opening
> statements. (July 31, 2002, Trans. pages 13-
> 15.) The Court provided Defendant the
> opportunity to locate the witnesses prior to
> final arguments on the Motion and counsel
> again stated that his investigator was unable
> to locate the witnesses. (Aug. 30, 2002,
> Trans. pages 11-12.)
>
> On the record before this Court, it is
> unclear which inconsistencies Defendant is
> relying on in support of his claim. Defendant
> has merely presented this Court with
> depositions of the witnesses and asserted that
> the trial testimony of these witnesses was
> inconsistent with the depositions. This
> Court, however, notes that Defendant does not
> recite any specific inconsistencies that would
> support a claim that the witnesses testified
> differently at trial based on the opening
> statement of the prosecutor. Moreover, since
> the witnesses could not be located, this Court
> is unable to conclude that these witnesses
> even heard the opening statement or that they

40

were influenced by the statement to such an
extent that they changed their testimony.

Additionally, this Court notes that the
record reveals that, on cross-examination,
counsel impeached all three of these witnesses
(Michael Johnson, Lashan Mahone and Jesse
Bracelet) with their prior depositions.
(Exhibit "D," pages 448-452, 570-583, 632-
653.) Defendant has not alleged in the
instant claim that counsel was somehow
ineffective for failing to adequately impeach
these witnesses. Accordingly, Defendant has
failed to satisfy his burden of proof with
regard to his claim that the State's witnesses
heard the State's opening statement and were
influenced by the statement. Defendant has
failed to demonstrate error on the part of
counsel or prejudice to his case.

Ex. H at 70-71.

Upon a thorough review of the record and the applicable law,

it is clear that the state court's adjudication of this claim was

not contrary to clearly established federal law, did not involve an

unreasonable application of clearly established federal law, and

was not based on an unreasonable determination of the facts in

light of the evidence presented in the state court proceedings.

Thus, Petitioner is not entitled to relief on the basis of this

claim.

## K. Ground Eleven

Petitioner contends that he received ineffective assistance of

counsel for counsel's failure to object to false statements made by

the prosecutor. Petitioner raised this claim as ground thirteen in

41

his first 3.850 motion, and the trial court adjudicated the claim

as follows:

> In ground thirteen of the November 22, 1999, Motion, Defendant claims that counsel rendered ineffective assistance by failing to object to the prosecutor's false statements during closing arguments.  Defendant asserts that the prosecutor made several statements during closing arguments that referenced facts not in evidence and amounted to false statements.
>
> Initially, this Court notes that wide latitude is permitted in arguing to a jury. Thomas v. State, 326 So.2d 413 (Fla. 1975); Spencer v. State, 133 So.2d 729 (Fla. 1961), cert. denied, 369 U.S. 880 (1962), cert[.] denied, 372 U.S. 904 (1963).  Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments. Spencer, 133 So.2d 729.  The standard for review of prosecutorial misconduct is whether "the error committed was so prejudicial as to vitiate the entire trial." Cobb v. State, 376 So.2d 230, 232 (Fla. 1979).  See Jones v. State, 612 So.2d 1370 (Fla. 1993); State v. Murray, 443 So.2d 955 (Fla. 1984).
>
> Further, the comments by the prosecutor, of which Defendant complains of, [sic] did not rise to the level of vitiating the entire trial. (Exhibit "D," pages 1118-1179.) Moreover, the comments by the prosecutor did not "'inflame the minds and passions of the jurors so that their verdict reflect[ed] an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law.'" Jones v. State, 612 So.2d 1370, 1374 (Fla. 1993) quoting Bertolotti v. State, 476 So.2d 130 (Fla. 1985).  Therefore, Defendant cannot demonstrate prejudice as a result of counsel's alleged error.

Ex. H at 69.

The trial court's decision was affirmed on appeal. Thus, there are qualifying state court decisions from both the state trial and appellate courts. Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

## L. Ground Twelve

In ground twelve, Petitioner claims that he received ineffective assistance of counsel for counsel's failure to request the court to find that a discovery violation occurred because the state did not disclose Michael Johnson as an expert. Petitioner raised ground twelve as a portion of ground three in his first 3.850 motion, and the trial court adjudicated the claim as follows:

> Defendant contends that the State failed to disclose Michael Johnson as an expert witness. Defendant, further, contends that counsel should have informed the Court that the State committed a discovery violation since there was no testimony that Michael Johnson was an expert.
>
> Initially, this Court notes that the State did not present Michael Johnson as an expert witness. (Exhibit "D," pages 371-

441.)[8] Further, the testimony of Michael
Johnson that Defendant is challenging in the
instant claim was provided during a
deposition. Accordingly, Defendant has failed
to establish that the jury was presented with
this testimony. Moreover, since Michael
Johnson did not testify as an expert, there
was no reason for counsel to impeach Johnson's
testimony by calling an expert to testify
about the actual amount of grams of cocaine in
one rock. Accordingly, Defendant has failed
to demonstrate error on the part of counsel or
prejudice to his case.

Ex. H at 65-66.

The trial court's decision was affirmed on appeal. Thus,

there are qualifying state court decisions from both the state

trial and appellate courts. Upon a thorough review of the record

and the applicable law, it is clear that the state courts'

adjudications of this claim were not contrary to clearly

established federal law, did not involve an unreasonable

application of clearly established federal law, and were not based

on an unreasonable determination of the facts in light of the

evidence presented in the state court proceedings. Thus,

Petitioner is not entitled to relief on the basis of this claim.

Even assuming *arguendo* that the state committed a discovery

violation by failing to disclose Michael Johnson as an expert

witness, defense counsel did not err in failing to object on this

---

[8] As noted in the discussion of ground six, the state did not
initially call Michael Johnson as an expert, but the court found that his
testimony regarding the weight and authenticity of the cocaine he was
attempting to sell was in the nature of expert testimony.

44

basis.  If defense counsel had objected to this testimony on this basis, the trial court would have been required to conduct a Richardson hearing.  See  Richardson v. State, 246 So.2d 771, 774-75 (Fla. 1971) (requiring a trial court to determine whether the state's discovery violation was: (1) inadvertent or willful; (2) trivial or substantial; and, (3) prejudicial to the defendant's trial preparation).

Here, it is clear that the alleged violation was inadvertent. The state did not call Michael Johnson as an expert.  He was called as fact witness, who, in the course of his testimony regarding the events in question, testified about the weight and authenticity of the cocaine he was attempting to sell.  Furthermore, it is clear that the defense was not prejudiced.  The state disclosed Michael Johnson as a witness and disclosed that he had made a statement to the police.  See Ex. A at 13-14.  It is clear that Petitioner's attorney deposed Michael Johnson prior to trial.  See Ex. B at 397. Based upon a review of defense counsel's cross-examination of Michael Johnson regarding the weight and authenticity of the cocaine, it is clear that counsel was prepared to question him on this subject.  Id. at 482-516.

Thus, even if counsel had objected, the outcome would not have been different.  Clearly, the trial court would have found that the violation was harmless.  This claim is without merit.

Accordingly, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** in chambers in Jacksonville, Florida, this 8th day of August, 2006.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

ps 7/31
c:
Foster Lee Brown
Ass't Attorney General Thomas D. Winokur